### ALBAN et v SCHNIEDERS

Ohio Appeals, 1st Dist, Hamilton Co

No 5885. Decided Dec 16, 1940

Bert H. Long, Cincinnati; Milton M. Bloom, Cincinnati and Elmer Conway, Cincinnati, for appellants.

John A. Scanlon, Cincinnati; Clarence A. Schnieders, Cincinnati; Dempsey & Dempsey, Cincinnati, and Merland, O'Meara, Santen & Willging, Cincinnati, for appellees.

## OPINION

### By HAMILTON, PJ.

Heard on appeal on questions of law and fact.

This law suit grows out of a claimed agreement between the appellants, Frank Alban and Emil J. Alban, and their stepmother, Augusta Alban Dieckmann, deceased, concerning the estate of plaintiffs' deceased father, John Alban, who died in 1917, testate.

Among the provisions in the will of the said John Alban was:

"I give and bequeath to my wife, Augusta, all of my personal and real estate, and after her death the same shall be divided among my children, share and share alike."

The deceased Augusta Dieckmann was the widow of John Alban and the plaintiffs, appellants here, were his children.

The will was never construed.

The account of distribution in the John Alban estate was filed in the Probate Court of Hamilton County on June 12th, 1919. Exceptions to the account were filed, but the same were never heard, nor were they acted upon by the Probate Court.

The plaintiffs' contention is, that they entered into an agreement with their stepmother, Augusta Alban Dieckmann, whereby she was to receive all the estate of her husband (their father), upon her agreement to leave to the two plaintiffs at her death, by will, all of her property. The claim is, that she not only agreed to leave the estate she received from her deceased husband, John Alban, but all other property which she might own or acquire during her life.

Augusta Alban later intermarried with the defendant, Frank Dieckmann. Augusta Alban Dieckmann died in 1935, leaving Frank Dieckmann, her husband surviving her. She died testate, leaving one-third of her estate to her husband, Frank Dieckmann, and the other two-thirds to her stepsons, the plaintiffs in this case. The husband, Frank Dieckmann renounced under the will and elected to take under the law. Thereupon, this suit was filed by the plaintiff, in which they seek specific performance of their claimed agreement, by which their stepmother was to devise by will all of her estate to them.

A demurrer was filed to the amended petition, which was overruled, and the defendants filed separate answers.

Defendant, Frank Dieckmann in his separate answer set up some fifteen or sixteen defenses, the most of which denied the right of the plaintiffs to maintain this action because of the statute of fraud and the proceedings in the Probate Court.

The trial court determined the issues in favor of the defendants, holding there was not sufficient evidence to establish the agreement.

The right to maintain the action is challenged by setting up the statutes providing that any agreement made to convey real estate must be in writing, signed by the party to be charged therewith, and witnessed by two witnesses. This is, in effect, the statute of fraud concerning such agreements.

On this question, it appears that the rule of law is:

"A parol agreement to dispose of real property in a particu- ██ lar manner by last will and testament, may be specifically enforced by a court of eq-. uity, * * *

"Such performance will be required when the promisee has wholly performed her part of the agreement, the existence of which is established by clear and convincing proof, * * * " Graman v Borgmann et, 14 O. N. P. (N.S.) 449, and cases therein cited.

See also: Shahan, Exr. et v Swan, 48 Oh St 25, and Kling, Admr., etc. v Bordner, 65 Oh St 86.

The rule that equity may give the relief sought providing the evidence established a claim, places ██ the burden upon the plaintiffs to prove: 1st, that they had fully performed their part of the claimed agreement, and could not be restored to their prior status concerning the property rights; 2nd: that there was such an agreement; and, 3rd: the terms of such agreement.

The will of Augusta Alban Dieckmann is in evidence, and by its terms, the plaintiffs herein, her stepsons, are placed on an equal footing with her husband as far as the distribution of her estate is concerned. She has, therefore, treated her two stepsons, as though they were her sons. The evidence is, that the relationship existing between Augusta Alban Dieckmann and her stepsons was that of a mother and her sons.

There is very little evidence tending to show performance of such an agreement as is here claimed by the plaintiffs. It is shown that they joined in a deed, when a piece of real estate in the estate of John Alban was sold by Augusta Alban Dieckmann, their stepmother, but it is not disclosed who received the avails, or, why, leaving the matter to inference, only the stepmother received the money. It is shown that the plaintiffs also joined in a transfer of some stocks. All of these acts would be necessary to make such sale under the terms of the will of John Alban,

deceased, in which the plaintiffs and their stepmother were the sole devisees. The acts of the two plaintiffs in joining in the transfers were entirely consistent with the carrying out of the terms of the will of John Alban, and were necessary to effect the sales and were required by the purchasers.

We do not feel that these acts show clearly and convincingly that the sons ever turned over to their stepmother their interest in the estate under the will of their deceased father.

This is not an action for an accounting. Moreover, it may be that under the will of John Alban, deceased, the fee title to all of the property was conveyed to the wife. The rule is that to cut down a fee, the provision must be as clear as the provision conveying the fee, to the effect that the testator intended to cut down the fee. If this construction were given to the will, it would be clear that there is no consideration for the agreement contended for by plaintiffs. We do not determine that question, however, in this action, and do not base our decision on that point. Performance by the plaintiffs is not clear and convincing.

On the proposition of the existence of the agreement, there is no direct proof. There was no one present at the time it is claimed the agreement was entered into but the plaintiffs and their stepmother, Augusta Alban (Dieckmann). The lawyer for the estate testified that he understood they had made some agreement, but he knew nothing about the terms thereof, and all he knew was the suggestion by some of the parties that they had some agreement, and that litigation in the estate would be discontinued. It is argued that the fact that a law suit was filed by Emil Alban, and later discontinued, tended to show some consideration that would support an agreement. All this is but fragmentary, and is not clear and convincing.

Statements by two witnesses are stressed as proof supporting the agreement. One of them is a sister of Augusta Alban Dieckmann, the other is the wife of Frank Alban.

The pertinent part of the evidence given by the sister, Mrs. Catherine Ibold is as follows:

"Q. Tell his Honor what she said about the boys and her property?

\* \* \*

A. She said . . . she was a very saving person. I used to tell her why she saved so much and she said she liked to save the money for the young folks, their father worked hard and she would like to see them get some.

\* \* \*

Q. Did she say anything to you as to who owned the property she had?

\* \* \*

A. Well, I don't know . . . the property really belonged to Mr. Alban; when he died he left everything to her and when she died it would be the boys'.

Q. Is that what she said to you?

A. Sure."

Mrs. Frank Alban testified on the point as follows:

"Q. I will ask you to state about the time this property was sold, if you have any conversation with Mrs. Augusta Alban with reference to this property?

\* \* \*

A. Well. at that time Frank and I were engaged to be married and when this property was to be sold it was necessary for him to sign his name to this deed in order to get a clear title; so this deed was sent on to him in California and, as you know, it takes about five days to get there, they were waiting on his signature, when Mrs. Dieckmann, who was then Mrs. Alban, called me on the telephone and asked me to meet her at her home. I went over to find out what she wanted and she said, 'Now Marie, I want you to do me a favor and write to Frank and ask him to sign that deed right away, we are anxious to clean up this deed here.' She said, 'He doesn't have to hesitate to sign this deed and you don't either, for you know I have agreement with the boys where I am to will them whatever money or property I have when I die because they turned things over to me. You are engaged to marry Frank and want him to know the same thing I tell you, he is not taking any risk in signing the deed.' On her say-so I wrote him to hurry up and sign the deed so they could go ahead with the deal."

This is the only evidence we find in the record that tends to prove that the agreement sued upon existed, or had been entered into.

It must be borne in mind that this evidence was given by the wife of one of the plaintiffs, an interested party, and referred to the agreement only in general terms, a statement easily made under the circumstances then existing, concerning the sale of real estate, the whole tenor of which could be changed by a word added or a word omitted in the statement by the deceased. It is difficult to understand why she would make such a declaration to the stepdaughter-in-law, when she had never made any such declaration to her attorney, or to the attorney in her husband's estate.

In any event. the terms are not clearly shown and are only stated generally in the evidence.

Further, plaintiffs' position is wholly inconsistent with the claimed agreement as shown by the evidence given by the attorney for Mrs. Dieckmann, who wrote her will, that when he read the will after her death, plaintiffs expressed themselves as fully satisfied with the will. Frank Alban, one of the plaintiffs, was named executor, and the will was probated and Frank Alban accepted the trust, qualified, and proceeded with the settlement of her estate under the will.

All the property conveyed in the will of Augusta Alban Dieckmann was her real estate. The evidence must be so convincing and clear as to destroy her will in toto, and to change the devolution of her property. It would be easy to destroy all wills if such evidence were held sufficient for the purpose, and furnishes a reason why the court

requires clear and convincing proof, and accounts for the passage of the statutes requiring such agreements to be in writing. While equity recognizes such agreements not in writing, it requires such clear and convincing oral proof as will amount in effect to a written document, and have equal probative value as proof shown by a written instrument.

Moreover, no decree of specific performance could defeat the rights of the surviving husband in the estate of his deceased wife under his electing to take under the law. The residue of the estate with the exception of three small legacies of one hundred dollars each goes to the plaintiffs, since the husband takes under the law.

Our conclusion is, that the plaintiffs have failed to establish such agreement by the quantum of proof required, as to the existence of such an agreement, the terms thereof, or the performance by the plaintiffs. The relief prayed for by the plaintiffs will be denied.

Decree accordingly.

MATTHEWS & ROSS, JJ., concur.